UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ALVIN JOHN LANGSFORD, III          CIVIL ACTION NO. 25-1105

                                          SECTION P

VS.

                                          JUDGE JERRY EDWARDS, JR.

MOREHOUSE PARISH JAIL, ET AL.      MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Plaintiff Alvin John Langsford, III, a prisoner at St. Tammany Parish Jail proceeding pro se and in forma pauperis, filed this proceeding on approximately August 1, 2025, under 42 U.S.C. § 1983. He names the following Defendants: Morehouse Parish Jail ("MPJ"), Sheriff Mike Tubbs, Warden Trevor Wilhite, and Lieutenant Don Taylor.[1]

For reasons that follow, the Court should retain Plaintiff's claims of excessive force against Lieutenant Taylor, claim that Warden Wilhite failed to protect him from Taylor shooting him with a mace rifle, claims that Taylor and Wilhite failed to provide decontamination measures and wound care after Taylor shot Plaintiff with mace, and claim that Taylor failed to provide wound care after Plaintiff returned from the hospital. The Court should, as detailed below, dismiss Plaintiff's remaining claims, including his requests to fire, demote, and criminally charge defendants.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

**Background**

Plaintiff claims that the morning of April 2, 2025, at MPJ, Lieutenant Don Taylor choked him until he could not breathe, bruising his neck and throat and causing resultant swelling.  [doc. #s 1, p. 5; 7, p. 9].  Plaintiff struggled against Taylor's grip because he feared for his life.  *Id.*  He claims that Taylor then attempted to break his leg, bending it "against the natural angle."  *Id.*  Plaintiff "then stopped all resisting," and Taylor and three others dragged him to "Max-1 cell."[2]  *Id.*  Plaintiff claims that Taylor allowed a nurse[3] to bend his fingers back and punch him with closed fists on his hands and arms while Taylor choked him.  [doc. # 7, p. 6].  The nurse allegedly shouted, "Put some pain on him[.]"  *Id.*

Plaintiff alleges that ten minutes later, Warden Wilhite entered the cell, ordered "the other two inmates who occupied the cell" to leave, and ordered Plaintiff to take off all his clothing.  [doc. # 1, pp. 5-6].  Warden Wilhite exited the cell, stating, "Make sure you tell them this!"  *Id.*  Plaintiff claims that while he was completely naked, facing a wall, "in full compliance," and posing no threat, Lieutenant Taylor then shot him four times with a "mace-ball rifle."  [doc. #s 1, p. 6; 7, p. 7].  He suffered four separate open wounds.  [doc. # 7, p. 5].  He now "has permanent physical damage to his back and buttocks."  *Id.* at 8.

Plaintiff claims that Warden Wilhite allowed Taylor to shoot him with the mace ball rifle. [doc. # 7, p. 7].

---

[2] Plaintiff also refers to Max-1 as max confinement and maximum custody.

[3] Plaintiff does not name the nurse as a defendant.

Plaintiff claims that Lieutenant Taylor and Warden Wilhite left him in the cell for twelve hours "with open wounds, without clothing, covered in mace . . . ."  [doc. # 7, pp. 5, 7].  He states that Wilhite knew that Taylor deployed the mace.  *Id.* at 7.  Mace also covered the cell and remained in the air inside the cell.  *Id.* at 5.  He was not offered a shower or a clean cell.  *Id.* When Plaintiff asked guards for a shower and clothes, they "replied, 'Lt. Taylor said leave you be.'"  *Id.*  He states that Taylor and Wilhite knowingly allowed him "to be denied treatment of any kind and ignored all requests for assistance . . . ."  *Id.* at 13.  Before he was later transferred to a hospital around twelve hours after Taylor's alleged uses of excessive force, Plaintiff suffered difficulty breathing, lost consciousness, had muscle spasms, was in extreme pain, and his skin, throat, and lungs were burning.  *Id.* at 13.  He struggled to swallow because his throat was swollen.  *Id.*

Plaintiff informed a night shift officer of his injuries; he also filed an emergency "sick call."  [doc. # 5, p. 6].  Approximately one hour later at around 10:30 p.m. on April 2, 2025, an officer escorted Plaintiff to a hospital, where he received x-rays, evaluation, treatment, a diagnosis, and pain medication.  [doc. #s 5, p. 7; 7, pp. 10, 13].

Plaintiff claims that MPJ and Lieutenant Taylor failed to maintain medical staff on site during the night shift.  [doc. # 7, pp. 2, 6].

Plaintiff was not allowed to shower for thirty hours after experiencing the mace.  [doc. # 7, p. 5].  He finally received a shower on April 4, 2025.  *Id.* at 11.

Plaintiff claims that when he returned to MPJ from the hospital, MPJ assigned him to a Max-1 cell.  [doc. #s 1, p. 7; 7, p. 2].  Faulting Lieutenant Taylor, Plaintiff alleges, "Over the course of a day or so," his cell, which was designed for only two people, had five inmates in it.

[doc. #s 1, p. 7; 7, p. 5].  He was "also placed in another two-man cell with 11 other inmates." [doc. # 7, p. 5].

Plaintiff claims that when he was moved to Max-1, Lieutenant Taylor allowed his property to be stolen.  [doc. # 7, p. 5].

Plaintiff claims that Lieutenant Taylor knew he required additional wound care after his trip to the hospital, but Taylor disregarded his requests for medical treatment.  [doc. # 7, p. 14]. For eight days after his trip to the hospital on April 2, 2025, he did not receive any additional wound care, despite a physician at the hospital telling Plaintiff's accompanying officer that Plaintiff required assistance cleaning and treating his wounds.  *Id.*

Plaintiff claims that for fifteen days in Max-1, he was not allowed to brush his teeth, make a telephone call, or receive a complaint form.  [doc. # 1, p. 7].

Plaintiff claims that Lieutenant Taylor and Warden Wilhite kept him in "max confinement" for fifteen days without issuing him a write up, offering him a hearing before a disciplinary board, or issuing a formal sentence.  [doc. #s 1, pp. 8-9; 7, pp. 5, 8].

Faulting MPJ, Plaintiff claims that in Max-1, he was not allowed to speak to his attorney. [doc. #s 1, p. 8; 7, p. 1].  He also claims that MPJ would not allow him to have his bible in maximum custody.  [doc. #s 1, p. 9; 7, p. 2].  He claims that Lieutenant Taylor took his mattress "from 6:00 a.m. to 6:00 p.m. Monday through Friday during [his] entire period of housing in Max-1 without cause."  [doc. # 7, p. 5].

Plaintiff states that when he returned to MPJ from St. Bernard Parish Jail on an unknown date, he informed Lieutenant Taylor that he did not feel safe at MPJ, but Taylor refused to place him in protective custody and stated, "We don't have protective custody, nobody knows you [are] here, you'll be alright."  [doc. # 7, p. 3].

4

Plaintiff alleges that while he was in Dormitory 3, another inmate, Mannie Mimms, threatened to sexually assault him or rape him if Plaintiff did not give him money. [doc. # 7, p. 4]. Plaintiff wrote letters to Lieutenant Taylor and Warden Wilhite expressing his "need to be moved to a different location," adding that he was not safe. *Id.* at 4, 8. He alleges that Taylor and Wilhite did not respond. *Id.* Later, Plaintiff informed Taylor that he needed assistance and that Mannie Mimms was extorting him and threatening to assault and rape him. *Id.* Plaintiff alleges that when he was showering later, Mimms entered and tried to grab Plaintiff's penis, buttocks, and other exposed areas while "appearing to masturbate." *Id.* Mimms stated that if Plaintiff did not give him what he wanted, he would take it. *Id.* Plaintiff refused the advances, and Mimms "left the shower area." *Id.* When Plaintiff reported Mimms' actions to Taylor, Taylor moved Plaintiff to Dormitory 2. *Id.* Plaintiff, however, claims that Taylor should have assigned him to protective custody. *Id.* at 5.

On April 19, 2025, in Dormitory 2, two inmates attacked Plaintiff, spitting on him, striking him, jumping on him, and holding him down. [doc. # 7, pp. 6-7]. They stole his watch and forced him to send them money. *Id.* at 7. He alleges that "no one came to help" even though "officers were posted outside the dormitory window observing the dorm." *Id.*

On an unknown date, Plaintiff was transferred "back to St. Bernard Parish." [doc. # 1, p. 8]. Plaintiff reported the incident with the two inmates in Dormitory 2 after he was transferred to St. Bernard Parish Jail. *Id.* His post-attack grievance was forwarded to Lieutenant Taylor at MPJ. *Id.* He claims that when he returned to MPJ, Taylor assigned him to maximum custody in retaliation for reporting the incident. *Id.* Plaintiff was transferred back to St. Bernard Parish approximately one week later. *Id.*

Plaintiff claims that Lieutenant Taylor (i) did not allow inmates to write formal grievances or complaints and (ii) "view[ed] any A.R.P. written and disregard[ed] them at his sole discretion." [doc. # 7, p. 6].

For relief, Plaintiff seeks criminal charges against Defendants, Defendants' employment demotion or termination, and monetary compensation. [doc. # 1, p. 9].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly,* 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett,* 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly,* 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal,* 556 U.S. at 677.

 "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp,* 632 F.3d 148, 152-53

(5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted).  Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Excessive Force

As above, Plaintiff claims that Lieutenant Don Taylor choked him until he could not breathe, bruising his neck and throat and causing resultant swelling.  [doc. #s 1, p. 5; 7, p. 9]. Plaintiff struggled against Taylor's grip because he feared for his life.  *Id.*  He claims that Taylor then attempted to break his leg, bending it "against the natural angle."  *Id.*  Plaintiff "then stopped all resisting," and Taylor and three others dragged him to "Max-1 cell."  *Id.*  Plaintiff claims that Taylor allowed a nurse to bend his fingers back and punch him with closed fists on his hands and arms while Taylor choked him.  [doc. # 7, p. 6].

Plaintiff alleges that ten minutes later, Warden Wilhite entered the cell, ordered "two inmates who occupied the cell" to leave, and ordered Plaintiff to take off all his clothing.  [doc. #

8

1, pp. 5-6].  Warden Wilhite exited the cell, stating, "Make sure you tell them this!"  *Id.*  Plaintiff claims that while he was completely naked, facing a wall, "in full compliance," and posing no threat, Lieutenant Taylor shot him four times with a "mace-ball rifle."  [doc. #s 1, p. 6; 7, p. 7]. He suffered four separate open wounds.  [doc. # 7, p. 5].  He now "has permanent physical damage to his back and buttocks."  *Id.* at 8.

When a prison official is accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and Unusual Punishments Clause, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  "Force beyond that reasonably required to maintain or restore discipline is 'wanton and unnecessary.'"  *Perez v. Collier*, 2021 WL 4095263, at *2 (5th Cir. Sept. 8, 2021) (quoting *Hudson*, 503 U.S. at 7).  "This standard looks to an official's subjective intent to punish."  *Id.*

However, not every malevolent touch by a prison guard gives rise to a federal cause of action.  *Hudson*, 503 U.S. at 9.  The Eighth Amendment does not protect against "*de minimis*" use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind."  *Id*. (citation and internal quotation marks omitted).  Courts consider the following factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

Here, the Court should retain Plaintiff's excessive force claims against Lieutenant Taylor. Plaintiff suffered significant, greater-than-de minimis injuries.  He suggests that there was no

need to apply force, and he posed no threat to anyone.  And turning to the final factor, there is no indication that Taylor made any effort made to temper the severity of a forceful response.  While Plaintiff does indicate that he resisted Taylor's grip, he explains that he struggled against Taylor because Taylor was choking him and he feared for his life.  There is no indication that Taylor applied force "in a good-faith effort to maintain or restore discipline."

### 3. Failure to Protect

To reiterate, Plaintiff alleges that Warden Wilhite entered his cell, ordered "two inmates who occupied the cell" to leave, and ordered Plaintiff to remove all his clothing.  [doc. # 1, pp. 5-6].  Warden Wilhite allegedly exited the cell, vaguely stating, "Make sure you tell them this!"  *Id.*  Plaintiff claims that Wilhite then allowed Taylor to shoot him with the mace ball rifle.  [doc. # 7, p. 7].

Plaintiff does not appear to raise an excessive force claim against Warden Wilhite.  He does not, for instance, allege that Wilhite conspired with Taylor to shoot him with mace balls or that Wilhite ordered Taylor to shoot him.  Instead, Plaintiff seems to claim that Wilhite failed to protect him from Taylor.

To state a failure-to-protect claim, a plaintiff must allege that a defendant's inaction amounted to deliberate indifference.  That is, he must allege that a defendant "knew of and disregarded a substantial risk of serious harm."  *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).  A prison official can act "with deliberate indifference if he helps create a risk to an inmate's health or safety."  *Adames v. Perez*, 331 F.3d 508, 515 (5th Cir. 2003) (citing *Cantu v. Jones*, 293 F.3d 839, 843-45 (5th Cir. 2002) (upholding a jury verdict against prison officials in a case where the plaintiff claimed that the officials deliberately permitted another inmate to escape his cell and attack the plaintiff)).

Here, while no model of clarity, Plaintiff's allegations do, when construed liberally and in his favor at this early stage of the proceeding, amount to a plausible failure-to-protect claim against Warden Wilhite. He specifically alleges that Wilhite allowed Taylor to shoot him, suggesting that Wilhite knew Taylor would shoot him and that Wilhite disregarded the substantial risk of harm arising from shooting a naked, compliant inmate with a mace ball rifle.[5] The Court should retain this claim.

**4. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and

---

[5] *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

A. <u>Decontamination and Wound Care After Shooting with Mace Rifle</u>

Plaintiff claims that Lieutenant Taylor and Warden Wilhite left him in the cell nude for twelve hours "with open wounds, without clothing, covered in mace . . . ." [doc. # 7, pp. 5, 7]. Wilhite allegedly knew Taylor deployed the mace. *Id.* at 7. Mace also covered the cell and remained in the air inside the cell. *Id.* at 5. He was not offered a shower or a clean cell. *Id.* When Plaintiff asked guards for a shower and clothes, they "replied, 'Lt. Taylor said leave you be.'" *Id.* He states that Taylor and Wilhite knowingly allowed him "to be denied treatment of any kind and ignored all requests for assistance . . . ." *Id.* at 13. He was not allowed to shower for thirty hours. *Id.* at 5. He finally received a shower on April 4, 2025. *Id.* at 11. Before he was later transferred to a hospital around twelve hours after Taylor's alleged uses of excessive force, Plaintiff suffered difficulty breathing, lost consciousness, had muscle spasms, was in extreme pain, and his skin, throat, and lungs burned. *Id.* at 13.

Plaintiff plausibly alleges that he had a serious medical need for wound care and mace decontamination and that Taylor and Wilhite—Defendants who, respectively, caused the injuries

12

and allegedly "allowed" the use of force—were deliberately indifferent to a substantial risk of serious harm when they failed to provide or arrange medical care.  Further, while Plaintiff received (i) medical care for his wounds approximately twelve hours after Taylor shot him with mace and (ii) decontamination from the mace about thirty hours later, Plaintiff plausibly alleges that he suffered substantial harm during the delays in care.  The Court should retain these claims.

### B. Twenty-Four Hour Medical Staffing

Plaintiff claims that MPJ[6] and Lieutenant Taylor failed to maintain medical staff on site during the night shift.  [doc. # 7, pp. 2, 6].

To the extent Plaintiff claims that the facility lacked medical personnel on-site at all hours, he does not state a plausible constitutional violation.  In *Brown v. Megg*, 857 F.3d 287, 290 (5th Cir. 2017), for instance, the court opined: "The magistrate judge also correctly rejected Brown's claims based on doctors not being on site around-the-clock.  Brown cites no authority, and we have found none, requiring that as a general matter."  The court cited with approval *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), which noted that the Eighth Amendment requires that prison medical staff be "able to treat medical problems or to refer prisoners to others who can[.]"  Likewise, in *Clyce v. Hunt Cnty., Tex.*, 515 F. App'x 319, 325 (5th Cir. 2013), the court opined that a "policy of not having an on-site medical provider" was not "itself unconstitutional . . . ."  *See Anderson v. Marshall Cty., Miss.*, 637 F. App'x 127, 133-34 (5th Cir. 2016) (finding that a county could constitutionally balance inmate safety and fiscal prudence by "adopting a policy of calling for outside doctors instead of relying on in-house medical professionals.").  The Court should dismiss this claim.

### C. Ongoing Medical Treatment

---

[6] Below, the undersigned recommends dismissing Plaintiff's claims against MPJ.

Plaintiff alleges that for eight days after his trip to the hospital on April 2, 2025, he did not receive any additional wound care, despite a physician at the hospital telling Plaintiff's accompanying officer that Plaintiff required assistance cleaning and treating his wounds due to the location of the wounds.  [doc. # 7, p. 11].  He claims that Lieutenant Taylor knew he required additional wound care, but Taylor disregarded Plaintiff's requests for treatment.  *Id.* at 14.  He alleges specifically that on April 3, 2025,[7] Taylor "was informed about the plaintiff's emergency room visit and disregarded all requests for post visit care or medical attention despite knowingly being aware follow-up care was needed."  *Id.*

Plaintiff "finally" received care from a nurse, who cleaned his wounds and applied triple antibiotic ointment and fresh dressings to his wounds.  [doc. # 7, p. 11].  The "nurse noted a slight infection[.]"  *Id.*

Construed liberally, Plaintiff raises a plausible claim against Taylor, alleging that Taylor knew he required additional wound care yet disregarded Plaintiff's requests for help.  While Plaintiff eventually received care from a nurse after an 8-day delay, he plausibly alleges that he suffered an infection a result, which is arguably substantial harm.  *See generally Formica v. Aylor*, 739 F. App'x 745, 758 (4th Cir. 2018) (finding that an infected tooth caused by a delay in treatment constituted substantial harm). The Court should retain this claim against Taylor.

D.  <u>Vague Claims</u>

Plaintiff asserts that Sheriff Mike Tubbs, MPJ, and Warden Wilhite are also "responsible for the lack of medical care."  [doc. # 7, p. 12].  However, Plaintiff does not specify which, of the several claims of lack of medical care he raises, these Defendants are responsible for.

---

[7] Plaintiff appears to write April 13, 2025, but from context and viewing the allegation in Plaintiff's favor, the undersigned presumes Plaintiff intended to write April 3, 2025.

Moreover—aside from his claim above against Warden Wilhite concerning a lack of treatment after Taylor shot Plaintiff with mace—Plaintiff does not allege that any of these Defendants knew of his requests for care or otherwise knew that he was exposed to a substantial risk of harm from a lack of medical care.

In addition, Plaintiff's vague allegation amounts to impermissible 'group pleading.'  *See Armstrong v. Ashley*, 60 F.4th 262, 274-75 (5th Cir. 2023) ("Armstrong's allegation also suffers from the distinct problem of group pleading: she simply faults the eight Law Enforcement Defendants as a group without factual material suggesting that any particular defendant suppressed evidence. Armstrong's allegation is independently insufficient for that reason since a § 1983 plaintiff must plead that each Government-official defendant, though the official's own individual actions, has violated the Constitution.").  Plaintiff alleges that all the Defendants are responsible.  But the Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations.  *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021) (dismissing claims because the pleading only referred to the defendants collectively and "without specific distinction as to individual knowledge possessed, and the action and/or inaction committed by each."); *see Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him.  The plaintiff must plead that each Defendant individually engaged in actions that caused the unconstitutional harm.").  Accordingly, the Court should dismiss these claims.

**5. Criminal Charges Against Defendants**

Plaintiff asks the Court to charge Defendants with crimes.

There is no constitutional right to have a person criminally prosecuted.  *Oliver v. Collins*,

914 F.2d 56, 60 (5th Cir. 1990).[8]  Investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government.  In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys.  In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys.  *See* LA. CODE. CRIM. PROC. arts. 61 and 62.

Plaintiff should direct his concerns to a local, state, or federal law enforcement agency. He should be aware that if a prosecuting authority investigates and chooses not to file charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281.  The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); *see, e.g., Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order.  Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities."). The Court should deny Plaintiff's requested relief.

**6. Demote or Fire Defendants**

For relief, Plaintiff seeks Defendants' employment demotion or termination.

---

[8] *See U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

The Court lacks authority to grant this request.  Federal courts are not personnel directors.  *See Hurrey v. Unknown TDCJ Corr. Officer A*, 2009 WL 3645638, at *2 (N.D. Tex. Nov. 4, 2009).  Courts "will not interfere in the administration of prisons absent an abuse of the wide discretion allowed prison officials in maintaining order and discipline."  *Royal v. Clark*, 447 F.2d 501, 501-02 (5th Cir. 1971).  The Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration."  *Shaw v. Murphy*, 532 U.S. 223, 230 (2001); *see Turner v. Safley*, 482 U.S. 78, 84-85 (1987).

Moreover, Plaintiff's request sounds in mandamus as he essentially asks the Court to, by writ, compel the non-federal official (or entity) with the authority to demote these Defendants to perform his or her duties.  In this respect, the Court lacks jurisdiction.[9]  *See Samuels v. Emanuel*, 2014 WL 50851, at *2 (W.D. La. Jan. 7, 2014) (reasoning, where the plaintiff asked "that the defendants be relieved from their duties[,]" that "federal district court lacks jurisdiction to review actions in the nature of mandamus, seeking to compel state officials to perform duties allegedly owed the plaintiff, as for example in this case . . . .").  The Court should deny Plaintiff's requested relief.

**7. Entity Unamenable to Suit**

Plaintiff names MPJ as a defendant.  Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."  Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership."  LA. CIV. CODE art. 24.

---

[9] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee *of the United States* or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361 (emphasis added).

MPJ does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against this entity.

**8. Limitation on Recovery Under 42 U.S.C. § 1997e(e)**

Apart from his requests to charge Defendants with crimes and to either fire or demote Defendants, Plaintiff seeks monetary compensation for physical and mental injuries. [doc. # 1, p. 9].

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Here, faulting Lieutenant Taylor, Plaintiff alleges that over "the course of a day or so," his cell, which was allegedly designed for only two people, had five inmates in it. [doc. #s 1, p. 7; 7, p. 5]. He was "also placed in another two-man cell with 11 other inmates." [doc. # 7, p. 5].

Plaintiff next claims that when he was moved to Max-1, Lieutenant Taylor allowed his property to be stolen. [doc. # 7, p. 6]. He also claims that from April 4-12, 2025, in Max-1, he did not receive a shower. [doc. # 1, p. 11].

Next, Plaintiff claims that Lieutenant Taylor and Warden Wilhite kept him in "max confinement" for fifteen days without issuing him a write up, offering him a hearing before a disciplinary board, or issuing a formal sentence.  [doc. #s 1, pp. 8-9; 7, pp. 5, 8].

Plaintiff claims that Lieutenant Taylor took his mattress "from 6:00 a.m. to 6:00 p.m. Monday through Friday during [his] entire period of housing in Max-1 without cause."  [doc. # 7, p. 5].

Plaintiff claims that Warden Wilhite and Lieutenant Taylor failed to protect him from another inmate, Mannie Mimms, who threatened to sexually assault him or rape him.  [doc. # 7, p. 4].

Plaintiff claims that Lieutenant Taylor (i) did not allow inmates to write formal grievances or complaints and (ii) "view[ed] any A.R.P. written and disregard[ed] them at his sole discretion."  [doc. # 7, p. 6].

Finally, Plaintiff claims that Lieutenant Taylor retaliated, assigning him to maximum custody for filing a grievance or report.

Plaintiff "brought" this action when he was incarcerated.  [doc. # 1, p. 2].  As to all the claims above, he seeks monetary compensation for only mental, emotional, or de minimis physical injuries suffered while in custody.  Further, the physical injuries Plaintiff describes in his pleadings are unrelated to the claims above and the associated request for monetary compensation.  *See Delgado v. U.S. Marshals*, 618 F. App'x 236, 237 (5th Cir. 2015) (affirming the dismissal of one of several claims under 42 U.S.C. § 1997e(e), because although the plaintiff suffered a physical injury, the injury was not related to the claim to which the court applied

Section 1997e(e)).[10]  In other words, he does not allege that he suffered any physical injury—or any other injury or damage compensable by monetary relief—*because* of the Defendants' alleged actions underlying the claims above.

At bottom, Plaintiff does not present a prior showing of physical injury or the commission of a sexual act as defined in 18 U.S.C. § 2246.  Thus, he may not recover compensation for mental or emotional injuries.  In addition, Plaintiff does not allege that he suffered any other injuries or damages compensable by monetary relief.

Accordingly, the Court should dismiss Plaintiff's request for compensatory relief for the claims listed above.  As Plaintiff does not seek any other cognizable relief for these claims,[11] the Court should dismiss them.

### 9. Identifying a Defendant

Plaintiff claims that for fifteen days in Max-1, he was not allowed to brush his teeth, make a telephone call, or receive a complaint form.  [doc. # 1, p. 7].

Plaintiff also alleges that on April 19, 2025, in Dormitory 2, two inmates attacked him, spitting on him, striking him, jumping on him, and holding him down.  [doc. # 7, pp. 6-7].  They

---

[10] *See also Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010) ("Although Jackson repeatedly asserts that his larger '*action*' contains allegations of a dental injury, and implies that this meets the injury requirement, our precedent demonstrates that, absent injury related to the strip search, his Eighth Amendment claim is not cognizable under § 1997e(e)."); *Green v. Denning*, 2010 WL 781723, at *3 (D. Kan. Mar. 5, 2010) ("[T]he physical injury requirement in § 1997e(e) is claim specific."); *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1224 (D. Colo. 2001) ("It would be contrary to this stated intent to allow a prisoner to bring any number of claims to court on the back of one injury."); *Beem v. Kansas*, 2012 WL 1534592, at *4 (D. Kan. Apr. 30, 2012) ("[M]erely bringing a case with one physical injury does not relieve all other claims from the physical injury requirement.").

[11] As above, the undersigned recommends dismissing Plaintiff's requests to criminally charge, fire, and demote Defendants.

20

stole his watch and forced him to send them money.  *Id.* at 7.  He alleges that "no one came to help" even though "officers were posted outside the dormitory window observing the dorm."  *Id.* He reported the incident after he was transferred to St. Bernard Parish Jail.  *Id.*

Plaintiff, however, he does not identify a responsible defendant(s).  Accordingly, the Court should dismiss these claims.[12]

**10. Supervisory Liability**

Plaintiff names Sheriff Tubbs as a defendant because Tubbs is allegedly "responsible for the violations that occurred to the Plaintiff while in custody" at MPJ.  [doc. # 7, p. 3].  He adds that Sheriff Tubbs is responsible for "any and all violations made by defendant(s) named in this complaint" because Tubbs is the supervisor of MPJ.  *Id.*  He similarly claims that as warden, Wilhite "is responsible for the actions of any of the defendants(s) listed in this complaint . . . ." *Id.* at 8.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries."  *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.

---

[12] To the extent Plaintiff intended to name Taylor as the responsible defendant for the latter claim above, he does not allege that Taylor knew of yet disregarded a substantial risk of serious harm. At best Plaintiff alleges only that weeks before the two inmates attacked him, he told Taylor that he was "on protective custody at St. Bernard Parish Jail," that he was transferred to MPJ for his safety, and that he still required protection at MPJ because he did not feel safe.  He therefore may have informed Taylor of some risk of harm, but absent more he did not inform Taylor of a *substantial* risk (or threat) of *serious* harm.  Otherwise stated, it is not plausible that Taylor *knew* of a substantial threat of serious harm from Plaintiff's vague, unadorned concern for his safety. *See Armstrong v. Price*, 190 F. App'x 350, 353 (5th Cir. 2006) (holding, where the plaintiff alleged that on four occasions he asked prison officials to place him in protective custody because of threats made by correctional officers and black inmates who allegedly believed he "was jeopardizing inappropriate personal and business relationships between the officers and inmates," that the plaintiff "failed to establish that, given the rather vague information he had provided them, it would be clear to a reasonable officer that such information presented a substantial risk of serious harm.").

1992).  "Vicarious liability does not apply to § 1983 claims."  *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).  "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'"  *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here—excepting the claims discussed above against Warden Wilhite—Plaintiff does not plausibly allege that Sheriff Tubbs or Warden Wilhite affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between the Defendants' conduct and any alleged constitutional violation.[13]  By naming Tubbs and Wilhite as defendants because they are, respectively, the sheriff and warden, Plaintiff pleads only vicarious liability.  *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . ."); *Lott v. Edenfield*, 542 F. App'x 311, 315 (5th Cir. 2013) ("[T]he complaint suggests that Lappin and Holder were aware of the conditions because they are 'the governmental authorities charged with oversight . . . .'  This is essentially a theory of respondeat superior[.]").

Plaintiff also does not allege that Tubbs or Wilhite implemented an unconstitutional policy, practice, custom, or procedure.

---

[13] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

Accordingly, the Court should dismiss Plaintiff's remaining claims against Sheriff Tubbs and Warden Wilhite.

### **Recommendation**

For the reasons above, **IT IS RECOMMENDED** that—excepting Plaintiff Alvin John Langsford, III's claims of excessive force against Lieutenant Taylor, claim that Warden Wilhite failed to protect him from Taylor shooting him with a mace rifle, claims that Taylor and Wilhite failed to provide decontamination measures and wound care after Taylor shot Plaintiff with mace, and claim that Taylor failed to provide wound care after Plaintiff returned from the hospital—Plaintiff's claims, as well as his requests to fire, demote, and criminally charge Defendants, be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See***

*Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 1st day of December, 2025.

_____

Kayla Dye McClusky
United States Magistrate Judge